UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
NATIONAL ELECTRIC SYSTEMS, INC.,

                      Plaintiffs,                No. 6:08-CV-1103-DNH-GJD

        v.

CITY OF ANDERSON, INDIANA,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

KOWALCZYK, TOLLES & DEERY, LLP      ANDREW S. KOWALCZYK, JR., ESQ.
Attorneys for Plaintiff                      RICHARD A. COHEN, ESQ.
185 Genesee Street
Utica, New York 13501

BOND, SCHOENECK & KING, PLLC        JOHN G. MCGOWAN, ESQ.
Attorneys for Defendant
One Lincoln Center
Syracuse, New York 13202-1355

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      Plaintiff National Electric Systems, Inc. ("plaintiff" or "National") alleges defendant City of Anderson, Indiana ("defendant" or "Anderson") unlawfully assessed liquidated damages pursuant to a public works project contract between the two parties. Plaintiff asserts there is diversity jurisdiction to bring its breach of contract claim against defendant. Plaintiff is a corporation organized under the laws of New York with its principal place of

business located in Boonville, New York, and defendant is a municipality organized and existing under the laws of Indiana.

Anderson moves to dismiss plaintiff's lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Alternatively, defendant moves for transfer of the action to the Southern District of Indiana pursuant to 28 U.S.C. § 1406(a). Plaintiff opposes defendant's motions. Decision was reserved after hearing oral argument on January 16, 2009 in Utica, New York.

## II. BACKGROUND

Sometime before August 2006, Anderson hired Spectrum Engineering ("Spectrum") to develop specifications for two transformers it planned to install in a new substation located in one of its industrial parks. Following defendant's approval, specifications were provided to several potential bidders, including U & I Products, Inc. ("U & I"), a sales representative servicing transformer manufacturers in New York. National learned of the specifications from U & I and later submitted a bid on the contract. Defendant accepted plaintiff's bid and faxed a purchase order for two transformers to plaintiff on August 15, 2006. See Ex. A to Pl's. Compl., Dkt. No. 1 (the purchase order). Plaintiff sub-contracted the manufacture of the transformers to Niagara Transformer Corp. ("Niagara"), a transformer manufacturing company located in Buffalo, New York.

On July 9, 2007, plaintiff's representatives attended a meeting in Anderson, Indiana to discuss the progress of the transformer project. In November of 2007 and January of 2008, Spectrum employees made two separate two-day trips to Niagara's facility in Buffalo, New York in order to observe final acceptance testing of the transformers before they were shipped to Anderson. Following successful testing, the first transformer was installed in

defendant's substation in December 2007, and the second unit was installed in February 2008.

National admits it failed to deliver the second transformer until approximately eighty-one days after the contractual deadline. See Pl's. Compl., Dkt No. 1, ¶ 5. Pursuant to the liquidated damages provision of defendant's request for bids, see Ex. B to Pl's. Compl., Dkt No. 1, ¶ 23, defendant withheld $139,500.00 from its payments to plaintiff as a penalty for the untimely delivery of the second transformer. Plaintiff alleges in its complaint that liquidated damages were improper because the delay in delivery of the second transformer was the result of an unforeseeable shortage of requisite M3 grade core steel.

Without yet filing its answer, Anderson now moves to dismiss plaintiff's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or alternatively, for transfer of the action to the Southern District of Indiana pursuant to 28 U.S.C. § 1406(a). Defendant argues there is no basis for the exercise of personal jurisdiction pursuant to New York's long-arm statute, New York Civil Practice Law and Rules ("CPLR") §§ 301 or 302(a)(1). Plaintiff does not argue a basis for personal jurisdiction under CPLR § 301; rather, its arguments are limited to the exercise of personal jurisdiction under CPLR § 302(a)(1). See Pl's. Mem. of Law in Opp'n, Dkt. No. 8-3, 3 ("[S]ufficient New York roots exist to establish jurisdiction without consideration of CPLR § 301."). Accordingly, CPLR § 301 will not be considered.

## III. DISCUSSION

### A. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

In opposition to a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing a proper basis for personal jurisdiction over the defendant. Bank

Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). Absent discovery or an evidentiary hearing, the plaintiff must only "allege facts constituting a prima facie showing of personal jurisdiction." PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1106 (2d Cir. 1997) (citing Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)); see also Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (citing CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986)). Additionally, all pleadings and factual ambiguities are construed in favor of the plaintiff. Overseas Military Sales, 21 F.3d at 507; Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 56-57 (2d Cir. 1985).

The law of the forum state must be used to determine whether there is a basis for the exercise of personal jurisdiction over a non-domiciliary defendant. Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). This analysis entails a two-part inquiry: First, plaintiff must have shown that the defendant is capable of being served with process under the forum state's laws; second, the exercise of personal jurisdiction over the non-domiciliary defendant must comport with the requirements of due process. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.2d 560, 567 (2d Cir. 1996).

### 1. Personal Jurisdiction Pursuant to CPLR § 302(a)(1)

CPLR § 302(a)(1) authorizes personal jurisdiction over a non-domiciliary defendant who transacts business within the state so long as the cause of action arises from the in-state business activity. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999) (citing Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 16, 308 N.Y.S.2d 337, 339 (1970)). Whether a party "transacts business" in New York requires consideration of the totality of the circumstances surrounding the foreign party's in-state

activities and its interactions with domestic parties. Bank Brussels Lambert, 171 F.3d at 787 (citations omitted).  A variety of factors are used to make this determination, including: (1) "whether the defendant has an ongoing contractual relationship with a New York corporation;" (2) "whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship;" (3) "what the choice-of-law clause is in any such contract;" and (4) "whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (citations omitted).  All factors require consideration, and no single factor is dispositive. Id.

With regard to the first and third factors, National concedes that Anderson does not have an ongoing contractual relationship with a New York corporation and that the contract between the two parties does not contain a New York choice-of-law provision.  Defendant had never previously entered a contractual relationship with plaintiff and the contract is silent as to the governing law in the event of a dispute.  The first factor therefore cuts against the exercise of personal jurisdiction over defendant, and the third factor carries no weight for either party.

Turning to the second factor, the most pertinent issue is the level of significance attributed to defendant's two trips to Niagara's facility in New York for the observation of final acceptance testing of the two transformers.[1]  Defendant argues that the second factor

---

[1] Defendant's presence in New York during the two trips to Niagara's facility is attributed through the conduct of Spectrum's employees.  Defendant does not challenge plaintiff's contention that Spectrum acted
(continued...)

weighs against the exercise of personal jurisdiction because the contract was negotiated and executed by telephone, e-mail, and facsimile communications while the two parties remained in their respective states. Additionally, defendant emphasizes that the contract called for plaintiff's performance in Indiana and performance was, albeit belatedly, made in Indiana in December 2007 and February 2008. Finally, defendant downplays the significance of its physical presence in New York when observing final acceptance testing of the transformers because its in-state activity occurred subsequent to the formation of the contract with plaintiff.

However, Anderson's reliance upon where the contract was negotiated and when the contract was formed is misguided. First, even assuming *arguendo* that the contract was formed prior to defendant's observation of performance testing in New York, CPLR § 302(a)(1) will serve as a basis for personal jurisdiction so long as plaintiff shows that defendant engaged in purposeful activity *related to the contract* and within New York *either before or after* the contract was executed. Taylor v. Devices, Inc., 538 F. Supp. 2d 560, 578 (W.D.N.Y. 2008) (citing Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 457, 209 N.E.2d 68, 75 (1965)). Therefore, defendant's presence in New York may still support the determination that it transacted business in New York regardless of whether the conduct occurred after the contract was formed. Second, although "formation of a contract in New York, by execution or acceptance of an offer, is sufficient to demonstrate a transaction of business for purposes of § 302(a)(1), . . . it is not necessary to the exercise of long-arm jurisdiction . . . ." Taylor, 538 F. Supp. 2d at 578 (internal citations omitted).

---

[1](...continued)
as its agent during these visits. Much to the contrary, defendant identifies Spectrum as its agent within its memorandum of law. See Def's. Mem. of Law in Supp., Dkt. No. 7, 7 ("Anderson's physical presence in New York was limited to *its agent*, Spectrum, visiting New York to observe acceptance testing after the contract was awarded to [plaintiff].") (emphasis added).

Accordingly, the negotiation of the contract via telephone and e-mail while the defendant was outside New York does not necessarily bar personal jurisdiction pursuant to the long-arm statute.

National has made a *prima facie* showing that defendant, through the conduct of its agent, Spectrum, engaged in purposeful conduct within New York that was related to the contract when it visited Niagara's facility to observe testing of the transformers. Anderson's observation of performance testing was related to the contract because the evidence shows defendant would not have authorized the shipment of the transformers but for satisfactory performance during "final acceptance testing." For example, plaintiff submits evidence of an e-mail sent from one of Spectrum's employees, David Bowles, to defendant discussing the results of the performance tests conducted in November of 2007. See Ex. C to Kennison Decl., Dkt. No. 8. After explaining that the transformer passed the performance tests and conformed to defendant's specifications, Mr. Bowles wrote: "I recommend that the transformer be released for shipment on Thursday, November 15 and preparations be made to receive and unload it at the site on Wednesday, November 21." Id. Furthermore, the final line-item within the purchase order sent by defendant is identified as "owner's representative to witness transformer tests." See Ex. A to Pl's. Compl., Dkt. No. 1. The purchase order reflects that defendant paid $2,750.00 for up to five days of observation of performance testing of the transformer. Id. Perhaps most significantly, defendant's specifications for the transformers include a subsection entitled, "Test and Performance." Ex. B to Pl's. Compl, Dkt. No. 1, 10. Within this subsection, defendant identifies the litany of tests that must be performed and requires that the results of such tests "shall be furnished prior to shipment of the transformer." Ex. B to Pl's. Compl., Dkt. No. 1, 10.

Taking into account Mr. Bowles's e-mail, defendant's payment for the observation of performance testing, and defendant's own requirement that it be provided successful test results prior to shipment of the transformers, plaintiff has made a *prima facie* showing that defendant purposefully traveled to New York to engage in conduct related to its public works contract with plaintiff.  Whether such conduct occurred before or subsequent to the formation of the contract is irrelevant because the in-state behavior was pursuant to the terms of the purchase order and, most importantly, served as a substantial factor in defendant's decision to authorize the shipment of the transformers to its place of business in Indiana.

Anderson's argument to the contrary is unpersuasive because, as noted above, the evidence demonstrates that the visits to New York to observe final acceptance testing served to substantially advance the contractual relationship between the parties.  Although defendant cites examples of cases declining to exercise personal jurisdiction over foreign parties who made brief visits to New York, these holdings rely upon the determination that the in-state visits were insufficiently essential to the contractual relationship. See, e.g., Kahn Lucas Lancaster, Inc. v. Lark Intern. Ltd., 956 F. Supp. 1131, 1136 (S.D.N.Y. 1997) ("The meetings were simply not essential to the continuance or development of the relationship between [plaintiff and defendant]; they are more properly characterized as courtesy calls common in business dealings."); Premier Lending Servs., Inc. v. J.L.J. Assocs., 924 F. Supp. 13, 17 (S.D.N.Y. 1996) (Determining that a meeting in New York between plaintiff and defendant was nothing more than a "brief progress report").  The cases cited by defendant are distinguishable because defendant's visits to New York were much more than mere "courtesy calls" or "brief progress reports."  Rather, defendant's presence in New York was the result of pre-meditated acts anticipated prior to the formation of the contract, and the

visits substantially advanced the contractual relationship because the transformers would not have been shipped absent defendant's observation of satisfactory performance testing. Therefore, the second factor for whether defendant transacted business in New York heavily supports the exercise of personal jurisdiction under CPLR § 302(a)(1).

The fourth factor for whether a party has transacted business in New York looks to the payments, if any, sent from the foreign party into the state. See Agency Rent A Car Sys., 98 F.3d at 29; Cutco Indus., 806 F.2d at 368. It is undisputed that defendant remitted payment to plaintiff in New York for the cost of the transformers less the amount of liquidated damages at issue. Plaintiff concedes that the contract did not require defendant to submit payment in New York, but nonetheless argues that the remittance of payment in New York was an implied obligation of the contract since plaintiff's only offices are located within the state.

Anderson correctly cites Unlimited Care, Inc. v. Visiting Nurse Ass'n of Eastern Mass., 42 F. Supp. 2d 327 (S.D.N.Y. 1999) for the proposition that "the consensual (but not contractually required) mailing of payments to [plaintiff] in New York, *standing alone*, does not convey jurisdiction." 42 F. Supp. 2d at 331 (emphasis added); see also Def's. Mem. of Law in Supp., Dkt. No. 7, 8 (quoting Unlimited Care); Def's. Reply Mem. of Law in Supp., Dkt. No. 9, 7 (same). Therefore, without considering whether defendant had an implied obligation to send payment to plaintiff in New York, defendant's remittance of payment in New York is insufficient *by itself* to constitute transacting business. Had defendant's conduct been limited to its payment to plaintiff in New York, the totality of the circumstances would not support the finding that defendant transacted business within the state. However, taken in conjunction with its other conduct, defendant's payment to plaintiff, although insufficient standing alone,

can serve as a single factor supporting the determination that it transacted business inside the state.

For all of these reasons, the totality of the circumstances surrounding defendant's conduct within New York support the exercise of personal jurisdiction under CPLR § 302(a)(1). Although the contract was negotiated via telephone and e-mail while defendant remained in Indiana, the formation of a contract outside New York is not necessarily fatal to the exercise of personal jurisdiction over an out-of-state defendant. Taylor, 538 F. Supp. 2d at 578 (internal citations omitted). Defendant's two visits to New York for the observation of final performance testing was sufficiently critical to its contractual relationship with plaintiff in light of the evidence showing that defendant would not have had the transformers shipped to Indiana but for the satisfactory testing observed by defendant's agents in New York. As discussed, this evidence includes defendant's pre-payments for observation of up to five days of performance testing, the requirement stated in its specifications submitted to potential manufacturers that shipment was contingent upon satisfactory test results, and an e-mail sent from defendant's agent discussing his recommendation that the transformer he observed was ready for shipment following successful testing in New York. Finally, defendant's argument as to its remittance of payment in New York is unpersuasive because plaintiff relies upon more than this factor. Taken alone, defendant's payment to plaintiff in New York is insufficient to confer personal jurisdiction; however, considered alongside defendant's conduct in New York in furtherance of the contractual relationship between the two parties, defendant's payment supports the determination that defendant transacted business in New York. Therefore, defendant's motion to dismiss for lack of personal jurisdiction will be denied.

## B. **Defendant's Motion for Transfer to the Southern District of Indiana**

As an alternative to dismissal, defendant moves to transfer plaintiff's lawsuit to the Southern District of Indiana pursuant to 28 U.S.C. § 1406. Under the statute, a district court lacking a basis for personal jurisdiction over a defendant may, in lieu of dismissal, transfer the plaintiff's lawsuit in the interest of justice "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Defendant's motion for transfer is thus predicated upon its argument that plaintiff's action suffers from a lack of personal jurisdiction. Having determined that a basis for the exercise of personal jurisdiction over defendant exists under CPLR § 302(a)(1), defendant's motion for transfer pursuant to 28 U.S.C. § 1406 will be denied.[2]

## IV. **CONCLUSION**

Defendant's motion to dismiss for lack of personal jurisdiction will be denied because it transacted business within New York during its two visits to observe final acceptance testing of plaintiff's transformers. For the reasons already discussed, defendant's in-state conduct was made in an effort to substantially advance its contractual relationship with plaintiff, and the evidence presented demonstrates that defendant would not have ordered plaintiff to ship the transformers to Indiana but for the observation of successful performance testing in New York. Therefore, personal jurisdiction over the defendant may

---

[2] It deserves mentioning that plaintiff mistakenly addresses plaintiff's transfer motion as if it were brought for *forum non conveniens* pursuant to 28 U.S.C. § 1404(a). Compare Def's. Mem. of Law in Supp., Dkt. No. 7, 9-10 with Pl's. Mem. of Law in Opp'n, Dkt. No. 8-3, 12-14. As a result, defendant raises arguments under 28 U.S.C. § 1404(a) for the first time in its reply memorandum of law. Although arguments raised for the first time in a moving party's reply memorandum should not normally be considered, plaintiff theoretically was afforded the opportunity to address why its action should not be transferred for *forum non conveniens* when it addressed that argument on its own accord within its opposition memorandum. In any event, the balance of convenience and justice, including the location of both parties' lay witnesses, does not substantially outweigh the deference given to plaintiff's choice of forum. See Golconda Mining Corp. v. Herlands, 365 F.2d 856, 857 (2d Cir. 1966).

be exercised pursuant to CPLR § 302(a)(1).  Given the finding of a basis for personal jurisdiction, defendant's motion for transfer as an alternative to dismissal will also be denied.

Accordingly, it is

ORDERED that

(1) Defendant's motion to dismiss plaintiff's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is DENIED;

(2) Defendant's motion, in the alternate, to transfer the action to the Southern District of Indiana pursuant to 28 U.S.C. § 1406(a) is DENIED; and

(3) Defendant shall file and serve an answer to the complaint on or before March 24, 2009.

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 10, 2009
        Utica, New York.